USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept. 20, 2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
UNITED STATES OF AMERICA,          :
                                   :
          -v.-                     :          11 Cr. 581 (JFK)
                                   :          **OPINION & ORDER**
ROBERT LEE MILES                   :
                                   :
                    Defendant.     :
--------------------------------- X

APPEARANCES

FOR UNITED STATES OF AMERICA
Preet Bharara
United States Attorney, Southern District of New York
Of Counsel:  Daniel Richenthal

FOR DEFENDANT ROBERT LEE MILES
Mary Mulligan
Friedman Kaplan Seiler & Adelman LLP

**John F. Keenan, United States District Judge:**

Before the Court is a series of pre-trial motions filed by Defendant Robert Lee Miles ("Defendant" or "Miles").  For the reasons that follow, the Defendant's motions are denied in part and granted in part.

**I. Background**

Miles was arrested in July 2011 at a Manhattan subway station after he walked between subway cars.  Upon bringing Miles to the precinct station house, the police recovered an unloaded handgun and his cell phone and sought to question him. Miles claims not to recall being advised of his Miranda rights, yet he made a handwritten statement in which he explained that

he needed money and that a friend gave him the gun so that Miles could take advantage of the Gun Amnesty Program, through which individuals can bring handguns to police precincts in exchange for $100.  In defense counsel's brief on this motion it is asserted that Miles had boarded the subway to get to the 30th Police Precinct and return the gun.  (Def. Mem. at 3-5).

The above facts are taken from the Defendant's Memorandum of Law, as Miles's Declaration accompanying his motion papers does not provide specifics about his story. (Miles Aff. at 2). He attests to no details regarding the precinct where he intended to deposit the gun for money, which subway line he boarded, what direction he was heading, or why he decided to walk between the cars.

Defendant has moved for (1) dismissal of the indictment under an "innocent possession" defense, or, in the alternative, an order permitting the jury to consider such a defense; (2) dismissal of the indictment on the ground of entrapment by estoppel and/or entrapment, or, in the alternative, an order permitting the jury to consider these defenses; (3) suppression of the handgun recovered upon his arrest; (4) suppression of post-arrest oral statements; (5) suppression of a post-arrest written statement; (6) suppression of the call log and contents of his cellular telephone; (7) preclusion of the contents of his cellular telephone; (8) preclusion of recorded phone calls from

2

Rikers Island; (9) an order precluding the Government from introducing evidence about his criminal record or the details of his prior arrests or convictions, even if he testifies; (10) an order precluding the Government from referring to him, in form or substance, as a "felon" or "convict" (in return, he has offered to stipulate to his prior convictions at trial); (11) an order for a bill of particulars listing the recorded phone calls from Rikers Island that the Government intends to introduce at trial and transcripts of those recordings, as well as a bill of particulars listing all convictions that the Government believes establish that Miles is subject to a mandatory minimum fifteen-year sentence under the Armed Career Criminal Act; and (12) early production of 3500 material.

## II. Discussion

### A.   "Innocent Possession"

Defendant has argued that New York City's Gun Amnesty Program entitles him to invoke an "innocent possession" defense. According to Defendant, "because Mr. Miles handled the gun for a very short period of time and for a good reason (i.e., to surrender it to New York City authorities for cash)," the indictment must be dismissed under an "innocent possession" defense.

The Second Circuit has not ruled on whether an "innocent possession" defense is applicable to the statute proscribing

3

felons from gun possession, 18 U.S.C. § 922(g) ("Section
922(g)").  The First, Fourth, Fifth, Seventh, Ninth, and
Eleventh Circuits have refused to read an "innocent possession"
defense into Section 922(g).  Only the D.C. Circuit has
permitted an innocent possession defense to Section 922(g), but
has limited it to cases in which the defendant can demonstrate
"(1) the firearm was attained innocently and held with no
illicit purpose and (2) possession of the firearm was transitory
— i.e., in light of the circumstances presented, there is a good
basis to find that the defendant took adequate measures to rid
himself of possession of the firearm as promptly [and as
reasonably as] possible." United States v. Mason, 233 F.3d 619,
624 (D.C. Cir. 2000).

The Court joins others in this district, as well as the
majority of Circuits, in finding that an "innocent possession"
defense to Section 922(g) would run afoul of both the plain
language and the underlying purpose of the statute.  Section
922(g) provides that "[i]t shall be unlawful for any
person . . . who has been convicted in any court of a crime
punishable by imprisonment for a term exceeding one year . . .
[to] possess in or affecting commerce, any firearm or
ammunition." 18 U.S.C. § 922(g).  "Possession" of a firearm is
the crime, rendering "innocent possession" an oxymoron.

In addition, the penalties section of the law provides that "[w]hoever <u>knowingly</u> violates [subsection (g)] shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2) (emphasis added).  The "knowing" standard stands in contrast to violations of other provisions of the statute, which require that a person act "willfully." <u>See, e.g.</u>, 18 U.S.C. § 924(a)(1)(D).  To act willfully, a defendant must have known that his conduct was against the law. <u>Bryan v. United States</u>, 524 U.S. 184, 192 (1998).  To act knowingly, however, the defendant need only know the facts that constituted the offense. <u>Id.</u> at 193.  Thus, to violate section 922(g), "a felon only must know that he possesses a gun; his purpose in doing so, whether good or bad, is irrelevant." <u>United States v. Gregg</u>, No. 01 Cr. 501, 2002 WL 1808235, at *5 (S.D.N.Y. Aug. 6, 2002) (rejecting an "innocent possession" defense for a Section 922(g) charge).

Turning to the statute's legislative history, the Court finds it instructive that an early version of the penalties section did include a willfulness requirement for each subsection of Section 922, including Section 922(g).  Many legislators, however, argued that for serious offenses – such as gun possession by felons – the Government should not be required to prove that the defendant had any intent to violate the law. As a result, the <u>mens rea</u> was reduced to knowledge. <u>The Firearms</u>

<u>Owners' Protection Act</u>, 17 Cumb. L. Rev. 585, 615–17, 647–48 (1987).  Thus, knowing possession of a firearm by a felon — whether innocent or willful — is a violation of section 922(g).

Moreover, the Supreme Court has admonished that "[w]hether, as a policy matter, an exemption [to a statute] should be created is a question for legislative judgment, not judicial inference." <u>United States v. Rutherford</u>, 442 U.S. 544, 559 (1979).  It is not for the courts, but rather for Congress, to create the defense of "innocent possession."  Indeed, Congress has done so in different contexts:  it created a specific exemption that allows for possession of firearms by those convicted of "offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." <u>See</u> 18 U.S.C. § 921(a)(20)(A).  An additional provision exempts antique guns, which are not considered a "firearm" for the purposes of the statute and, therefore, may be legally possessed by felons. 18 U.S.C. § 921(a)(3), (16).  While Congress has decided to create certain exemptions, it notably has not created one for felons who possess a gun innocently.

The Court also notes that even if an "innocent possession" defense were available in this Circuit, it would not be available to this Defendant, based upon his affidavit, which is meaningless on its face.  Defendant does not provide any

specificity about his plan to avail himself of the Gun Amnesty
Program, such as the address where he obtained the gun (or even
a cross street).  He also does not specify which precinct he was
going to or explain which subway route he intended to take.
Defendant's counsel has made representations that he was taking
the subway from 145th Street to 168th Street and then would
change trains to go south to the 30th precinct (Tr. of July 22,
2012 at 4) – a route that the Court observed is bizarre and
inefficient because he could have gone one stop north to 155th
Street from 145th Street – but Miles has not sworn to any of
these facts.  As a result, there is no basis for Defendant's
"innocent possession" defense.

     Finally, even if such a defense were recognized, the facts
of this case would not warrant the defense of innocent
possession under the D.C. Circuit's decision in <u>Mason</u> (which is
not controlling precedent here).  Even if the Defendant obtained
the gun innocently and possessed it with no unlawful purpose,
the second prong of the <u>Mason</u> test requires that the possession
in question be transitory, which Miles's possession was not.
<u>Mason</u>, 233 F.3d at 624.  According to his statement, the
Defendant carried the gun and intended to ride the subway with
it.  For possession to be "transitory," the defendant must have
taken "adequate measures to rid himself of possession of the
firearm as promptly as reasonably possible." <u>Id.</u> at 624.  Here,

the Defendant did not relinquish the gun when the police first approached him.  Mason is also inapposite because Miles does not represent that he obtained the gun to prevent harm to others; rather, he chose to carry it for pecuniary gain.

### B.    Entrapment by Estoppel/Entrapment

Defendant next argues that through New York's wide promotion of its 40-year-old gun amnesty programs, "state and local officials have announced that any individual, including those who were convicted of felonies, may legally possess guns for the limited purpose of surrendering them to authorized entities."  Moreover, Defendant notes, New York law immunizes individuals who avail themselves of certain gun amnesty programs from prosecution for gun possession. See N.Y. Penal Law § 265.20.  Defendant states that "conspicuously absent from the materials promoting and discussing New York gun amnesty programs is any sort of warning that participants might be subject to prosecution by the Federal government."  In addition, Defendant posits that the Government is estoped from prosecuting the instant charge because New York's promotion of its Gun Amnesty Program "coaxed Mr. Miles' behavior, and indeed, legitimized it."

Entrapment by estoppel applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official.  To invoke the

entrapment by estoppel defense, the defendant must show "that he relied on the official's statement and that his reliance was reasonable in that a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries." United States v. Corso, 20 F.3d 521, 528 (2d Cir. 1994).  The Second Circuit has further noted that the defense of entrapment by estoppel "focuses on the conduct of the government leading the defendant to believe reasonably that he was authorized to do the act forbidden by law." United States v. Abcasis, 45 F.3d 39, 44 (2d Cir. 1995).

Entrapment by estoppel requires an "affirmative representation" that the proscribed conduct "was or would be legal," not an affirmative representation that the proscribed conduct was against the law. See United States v. Giffen, 473 F.3d 30, 43 n.13 (2d Cir. 2006) ("The fact that the officials did not volunteer an observation that the conduct was illegal does not reasonably support [the defendant's] concluding that his conduct was being authorized."). See generally Cheek v. United States, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").  Defendant has not alleged any such affirmative representations by a local, state, or federal government

official.  Defendant's myriad exhibits relating to the Gun
Amnesty Program merely contain descriptions of the program.
Nowhere in these materials is there a representation by an
authorized government official that Miles's participation in the
program was – or would be – legal.

Notably, Defendant does not allege that federal authorities
were involved in creating the advertisements for the Gun Amnesty
Program, but rather attributes them to state and local
authorities.  Because these advertisements did not include an
affirmative warning of the possibility of federal prosecution,
Defendant argues, he should not be subject to such prosecution.
Under Defendant's reasoning, however, any Defendant who alleges
that he was following state or local policy might escape U.S.
prosecution.  As the Government notes in its brief, federalism
does not permit local authorities to thwart federal law
enforcement efforts simply by enacting a new policy and failing
to mention that federal law is still in effect.

For the reasons stated above, Defendant's motion is denied.
At trial, the Court will determine whether a jury instruction on
entrapment is warranted.  See United States v. Paul, 110 F.3d
869, 871 (2d Cir. 1997).

### C.   Probable Cause

Defendant asserts that the gun must be suppressed because
officers lacked probable cause to arrest and frisk him.  Based

10

upon his reading of the New York statute, Defendant suggests
that walking between subway cars while the train is still on the
platform is permitted, but crossing between subway cars when a
train is in motion is prohibited.  According to Defendant, he
moved between the doors while the train was still in the
station. (Miles Aff. ¶¶ 9, 11).  Therefore, Miles reasons, the
police officers did not have reasonable suspicion to stop and
frisk him.

        The applicable New York Law reads:

        No person may ride on the roof, platform between subway
        cars or on any other area outside any subway car or bus or
        other conveyance operated by the authority. No person may
        use the end doors of a subway car to pass from one subway
        car to another except in an emergency or when directed to do
        so by an authority conductor or a New York City police
        officer.
N.Y. Comp. Codes R. & Regs. 21, § 1050.9(d).

        The Defendant posits that "the use of the word 'ride' in
the first sentence . . . indicates that the regulation prohibits
certain activity while the train is in motion." (Def. Mem. at
19).  Further, Defendant says this interpretation is "consistent
with the regulation's purpose of promoting the physical safety
of individuals who ride the subway:  When the train is halted at
a platform, there is little concern that an individual will be
physically harmed by passing through the subway's end doors."
He cites Hernandez v. City of New York, No. 00 Civ. 9507 (RWS),
2004 WL 2624675 (S.D.N.Y. Nov. 18, 2004), in support of his

reading of the regulation.  There, the court found probable
cause because the Defendant "admitted . . . that he passed
between subway cars while the train was in motion." Id.

The Government responds that the Defendant's activity falls
under the regulation's second sentence, which does not contain
the word "ride" or any other implicit or explicit reference to
the train's movement.  Further, the Government asserts that
there is nothing to indicate that the regulation's first
sentence modifies the second.

The Court agrees with the Government's interpretation of
the regulation.  The second sentence explicitly prohibits
walking between the cars and makes no mention of whether the
subway must be in motion.  Indeed, it lists only two situations
where passing between cars is permitted:  emergency or by
direction of authority.  The Court need not explore the policy
behind the regulation (although it likely militates in favor of
the Government's position) or undertake elaborate statutory
construction techniques, as the sentence is unambiguous.

It should also be noted that Hernandez, which Defendant
cites in support of its interpretation of the New York statute,
contains no analysis of the regulation or any other indication
that the Defendant's interpretation of the statute is correct.
The Hernandez court merely noted that the defendant admitted to

12

crossing between cars while the train was moving, and did not suggest that the statute required such an admission.

### D.    Suppression of Post-Arrest Statements

The Defendant asserts that his post-arrest statements must be suppressed because he does not recall having been advised of his <u>Miranda</u> rights. (Def. Mem. 21-23; Miles Decl. ¶ 17).  The Government has represented that it does not intend to use any such statements at trial in its case in chief. (Gov't Mem. at 20).  Therefore, this motion is denied as moot.

### E.    Suppression of Cell Phone Contents

The Defendant asserts that the phone records and contents of his phone should be suppressed because (1) photographic and textual messages are irrelevant and highly prejudicial, and (2) the Government's search of his cellular phone violated his Fourth Amendment rights.

Defendant's first ground for "suppression," as the Government points out, is more properly construed as a motion <u>in limine</u>.  As such, the motion is denied, without prejudice, as premature.

Defendant's second ground for suppression, however, is made at the appropriate time and will be addressed.  Defendant moves to suppress any evidence obtained through a search of his cell phone on the grounds that he does "not recall the Government

ask[ing] for his consent to search his phone or that he ever gave such consent." (Def. Decl. at ¶ 23).

According to the Government, it met with the Defendant on December 9, 2011 for a proffer session. During that session, it asked the Defendant whether agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") could review and seize the contents of his cell phone. After consulting with his attorney, who was then Paul J. Madden, Esq., the Defendant consented to the cell phone search. That same day, the Government emailed Mr. Madden to memorialize the agreement:

> [B]y this email, I confirm that Mr. Miles provided oral consent during the proffer for law enforcement to search the cellphone recovered from him in connection with his arrest, and to review and seize any information therein. Please be advised that, pursuant to the proffer agreement, any information recovered during this search may be used for any purpose, including against Mr. Miles in this or any other case. Please let me know immediately if Mr. Miles does not consent, in which case we will obtain a search warrant.

Gov't Exh. B.

Based upon the Defendant's own alleged facts, this motion is denied without an evidentiary hearing. An evidentiary hearing is required only where "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005). Defendant's affidavit does not meet this standard because failing to recall certain

14

conversations with law enforcement does not give rise to a factual dispute, particularly where the Government supplies undisputed written confirmation of Defendant's consent. See, e.g., United States v. Jass, 331 F. App'x 850, 955 (2d Cir. 2009) (upholding district court's denial of a hearing where the defendant "did not allege that arresting officers failed to advise him of his Miranda rights; he claimed only that he could not 'remember' receiving a Miranda warning"); United States v. Love, 859 F. Supp. 725, 735 (S.D.N.Y.) (denying hearing where the defendant "merely alleges that he cannot recall whether or not he was read his Miranda rights"), aff'd, United States v. Roberts, 41 F.3d 1501 (2d Cir. 1994).

### F.   Phone Call Recordings

Defendant has also moved to "suppress[]" all recorded phone calls placed from Rikers Island under Federal Rules of Evidence 401, 402, 403, and 404(b), to the extent those calls were placed by individuals other than the Defendant, irrespective of whether the Defendant authorized those calls and irrespective of the content of those calls. This motion is a motion in limine, consideration of which would be premature. In the event that there is a trial, the Government represented that it will "file notice under Federal Rule of Evidence 404(b) timely in advance of trial, in the event that the Government intends to introduce

evidence under that rule." (Gov't Mem. at 27).   Therefore, this
motion is denied without prejudice.

### G.   Evidence of Defendant's Criminal History

Next, the defendant moves to (1) preclude the introduction
of evidence about the defendant's criminal record or any details
of his prior arrests or convictions, even if he testifies, and
(2) preclude the Government from describing the defendant "in
form or substance, as a 'felon' or 'criminal.'"  Defendant's
first request is also premature, and therefore is denied without
prejudice.  The Defendant's second request – that the Government
be prevented from describing the Defendant as a "felon" or
"criminal" is granted in substance, to the extent that the
Government should refer to him as "Defendant," "Mr. Miles" or
"Miles".

### H.   Bill of Particulars

Defendant requests a bill of particulars pursuant to Rule
7(f), detailing Defendant's twenty-four previous "violent
felony" or "serious drug offense" convictions.   Defense counsel
represents that in light of hundreds of pages of records for
many of the Defendant's previous cases, without the requested
bill of particulars, "Defense Counsel will be forced to spend a
burdensome amount of time and resources reviewing all of these
records and prepare defenses to each of Mr. Miles' previous
convictions that could plausibly be used by the Government in

16

seeking to establish three prior, relevant offenses." Defendant also requests a bill of particulars containing the recordings and transcripts of phone calls placed from Rikers Island, should the Government plan to rely on any of the phone calls at trial.

A bill of particulars is required only "where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1991). The Defendant has not asserted that he is not aware of the "specific act" of which he stands accused. Indeed, the Government has provided defense counsel with a copy of the Defendant's criminal history record. No additional information should be required.

As the Government notes, "whether the Defendant is subject to a mandatory minimum sentence under the Armed Career Criminal Act is a question for this Court at sentencing, not the jury at trial." See United States v. Harrington, 370 F. App'x 216, 220 (2d Cir. 2010) ("[T]his Court has affirmed that it is a role for the district court, not a jury, to find the predicate felony convictions before sentencing a defendant as an armed career criminal." (citing United States v. Massey, 461 F.3d 177, 179 (2d Cir. 2006); United States v. Estrada, 428 F.3d 387, 390 (2d Cir. 2005)).

Defendant's request for a bill of particulars as to the Rikers Island calls is denied, with the condition that the

Government is instructed to notify the Defendant by October 9, 2012, as to whether it intends to introduce any of the Rikers Island phone calls at trial.  If the Government intends to use any of the calls, it must inform Defense counsel which calls will be used, and provide transcripts for these calls, if the Government creates them.

### I. 3500 Material

Finally, Defendant requests an order from the Court that the Government make early production of material covered under 18 U.S.C. § 3500.  That motion is denied, as district courts lack the power to mandate such production. See, e.g., In re United States, 834 F.2d 283, 287 (2d Cir. 1987); United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n. 1 (2d Cir. 1974); United States v. McGuinness, 764 F. Supp. 888, 896 (S.D.N.Y. 1991).

### III. Conclusion

For the reasons described above, Defendant's motion as to denominating the Defendant as a "felon" or "criminal" is granted in substance, to the extent that the Government should refer to the Defendant as "Defendant," "Mr. Miles," or "Miles."  The remainder of his motions are denied, with the condition that the Government must provide details to Defendant by October 9, 2012 if it intends to use any of the recorded phone calls from Rikers Island at trial.  Pursuant to the parties' agreed-upon

scheduling modification submitted to and accepted by the Court

on September 20, 2012, the trial will start on November 13,

2012; motions in limine are due on November 1, 2012, and voir

dire questions and requests to charge are due by November 9,

2012 at 3 p.m.


**SO ORDERED.**

Dated:      New York, New York
            September 2 0, 2012

                                        _John F. Keenan_
                                        John F. Keenan
                                United States District Judge