**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA,            :
                                     :
    -against-                        :     No. 11 Cr. 581 (JFK)
                                     :
ROBERT LEE MILES,                    :              **ORDER**
                                     :
              Defendant.       :
------------------------------------X

<u>APPEARANCES</u>

FOR DEFENDANT ROBERT LEE MILES:
    Donald J. Yannella, III
    DONALD YANNELLA P.C.

FOR THE UNITED STATES OF AMERICA:
    Daniel C. Richenthal
    Kaylan E. Lasky
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is an emergency motion by Robert Lee Miles for a sentence reduction to time served and his immediate release from the Metropolitan Correctional Center, New York ("the MCC") due to Miles's advanced age, compromised health, and his status as a medically "high-risk" inmate who is especially vulnerable to contracting the Coronavirus, COVID-19 ("COVID-19"). The Government opposes Miles's motion as untimely because he did not first fully exhaust his administrative rights under the applicable statute, 18 U.S.C. § 3582(c)(1)(A), before seeking judicial intervention.[1] To its credit, however, the

---

[1] The Court need not reach this argument because, as discussed below, it concludes that Miles's immediate release is not warranted at this time.

1

Government requests that, if the Court were to grant Miles's motion, the Court order (1) that Miles either be quarantined for at least 14 days or he be otherwise determined by the Federal Bureau of Prisons ("the BOP") to not have COVID-19, so as to protect the public; and (2) that the conditions of Miles's supervised release be modified to add a special condition that he reside in a residential reentry center—commonly known as a halfway house—so as to protect Miles, because allowing him to return to a homeless shelter, as Miles's release plan initially proposed, may increase his risk of exposure to COVID-19, given that many cases of the virus are reported to exist in such shelters.

For the reasons set forth below, Miles's motion is DENIED.

**I. Background**

Miles has been incarcerated at the MCC since a status conference before the Court on November 12, 2019, during which Miles's supervised release was revoked after he failed to successfully complete an inpatient substance abuse program— Miles's third attempt at completing such a program.  The month prior to Miles's remand, the Court had granted his request for that third opportunity to undergo inpatient treatment during Miles's arraignment on the specifications which led to his detention.  At that October 2, 2019 conference, the Court also took note of allegations that Miles had repeatedly violated

2

certain conditions of his supervised release by testing positive for controlled substances on numerous other occasions and frequently failing to report as directed by his Probation Officer.  The Court explained to Miles in clear terms that, in granting his request for inpatient treatment, it expected him to successfully complete the program.  Nevertheless, Miles was expelled from the program after only a few weeks.

On November 15, 2019, Miles pleaded guilty to violating condition two of his term of supervised release by using a controlled substance, to wit, cocaine.  The Court sentenced him to a Guidelines term of seven-months' incarceration largely due to Miles's repeated—and apparently willful—refusal to comply with the mandatory conditions of his supervised release.

On April 11, 2020, Miles (through his counsel) filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("the Motion").[2]  (ECF No. 96.)  The Motion explained that Miles does not have his own apartment, nor friends or family who could offer him a place to stay if he is released.  Rather, the Motion—and Miles's April 1, 2020

---

[2] In the alternative, Miles requested that the Court "intervene in his pending application to the Metropolitan Correction[al] Center for release to community confinement, pursuant to 18 U.S.C. § 3624." (Letter Mot. for Sentence Modification at 1 (Apr. 11, 2020), ECF No. 96.)  The Court, however, lacks the authority to do so. See, e.g., United States v. Kanagbou, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (summary order) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence."); see also 18 U.S.C. § 3621(b).

3

application to the Warden of the MCC—explained that Miles intended to return to the homeless shelter on Wards Island where he previously resided. The Motion also stated that Miles would agree to "community confinement" if it was arranged by the U.S. Probation Department.

The Government filed its opposition on April 17, 2020, (ECF No. 97), and Miles filed his reply shortly thereafter on April 20, 2020, (ECF No. 99). In his reply, Miles agreed with the Government's observation that a recent article in The New York Times reported that COVID-19 infections have sharply increased in certain homeless shelters, including the shelter on Wards Island. See Nikita Stewart, 'It's a Time Bomb': 23 Die as Virus Hits Packed Homeless Shelters, N.Y. Times (Apr. 13, 2020), https://www.nytimes.com/2020/04/13/nyregion/new-york-coronavirus-homeless.html. Accordingly, Miles agreed to the Government's alternative request that if the Motion were granted, the Court should require that he reside at a residential reentry center upon release.

The Court heard the Motion during a telephonic conference on April 22, 2020.[3] During the conference, Miles's Probation Officer explained how the residential reentry center where Miles would be placed is responding to the COVID-19 pandemic. Miles's

---

[3] Through his counsel, Miles waived his right to appear during the conference.

Probation Officer reported that residents of the center are in shared rooms with shared bathrooms; the center is in a state of lockdown and is not allowing residents in or out of the facility; and the center has implemented very strict requirements for residents' behavior.  Miles's Probation Officer expressed concern that, given his history of altercations with staff members during his recent inpatient drug treatment attempts, Miles's placement in the reentry center with its strict protocols and zero-tolerance for similar such behavior by Miles, could result in his expulsion from the center followed by homelessness, thereby potentially placing Miles at even greater risk for contracting COVID-19 than if he were to remain in quarantine at the MCC.

**II.  Discussion**

18 U.S.C. § 3582(c)(1)(A) authorizes a court to modify a term of imprisonment "upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is satisfied or waived, see, e.g., United States v. Smith, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020), a court may reduce the

defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  Id. § 3582(c)(1)(A).

    The Court is receptive to Miles's request and deeply sympathetic to the heightened risk he faces from COVID-19.  Miles is 56 years old; he suffers from asthma, for which he takes two medications; and in late-2019 and early-2020, Miles represents that he endured bouts of pneumonia.  Miles is currently serving his sentence at the MCC where, as of April 23, 2020, five inmates and 33 staff have tested positive for COVID-19.  See Letter from M. Licon-Vitale & D. Edge, Wardens, Metro. Corr. Ctr. & Metro. Det. Ctr., to Hon. Roslynn R. Mauskopf, Chief Judge, E.D.N.Y. (Apr. 23, 2020), https://www.nyed.uscourts.gov/coronavirus.  Indeed, the BOP has placed Miles on its list of "high-risk" inmates who are especially vulnerable to contracting the disease.

    Nevertheless, after considering the 3553(a) factors, given the kinds of sentences available, 18 U.S.C. § 3553(a)(3), and Miles's history and characteristics, id. § 3553(a)(1), including the significant behavioral issues that arose during Miles's

recent stints in inpatient substance abuse programs and his prior and seemingly willful refusal to fully comply with the conditions of his supervised release, the Court is decidedly concerned that Miles's release plan will in fact place him at a higher risk of contracting COVID-19, effectively undoing the very reason for his compassionate release.  Accordingly, the Court is not convinced that Miles has set forth the requisite "extraordinary and compelling reasons" to justify release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and his motion must be denied.

If, however, Miles is able to propose a release plan that is acceptable to the U.S. Probation Department for the Southern District of New York, the Court will readily revisit this decision.  Under those circumstances, the Court would urge the Government to consider whether waiver of the 30-day exhaustion requirement is warranted should its opposition either (1) not contest that extraordinary and compelling reasons may exist for immediate release; or (2) request a quarantine period that, when satisfied, would permit the defendant's release on a date more than 30-days after the defendant's initial request to the warden of the defendant's facility.

**SO ORDERED.**

Dated:    New York, New York
          April 25, 2020

John F. Keenan
United States District Judge